# In the United States Court of Federal Claims

No. 15-418C
(Filed: July 28, 2016)

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| **MARK R. FULLER,** | Military Discharge; Judgment on the Administrative Record; Legal Hold; Retirement; Drop from Rolls; Military Control; Supervised Release; SECNAVINST 1620.6C. |
| Plaintiff, | |
| v. | |
| **THE UNITED STATES,** | |
| Defendant. | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

David P. Sheldon, 1100 New Jersey Ave, Suite 720, Washington, DC 20003, for Plaintiff.

Benjamin C. Mizer, Robert E. Kirschman, Jr., Martin Hockey, and Daniel S. Herzfeld, United States Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant. Major Dawn M. Steinberg, Officer of the Judge Advocate General, Department of the Navy, of Counsel.

---

### OPINION AND ORDER

---

**WILLIAMS**, Judge.

This military pay case comes before the Court on the parties' cross-motions for judgment on the Administrative Record ("AR"). Plaintiff challenges the decision of the Board for Correction of Naval Records ("BCNR") denying his request for reinstatement of his retirement benefits, back pay, and an honorable discharge. Plaintiff was dropped from the rolls of the Marine Corps as a result of his incarceration in a civilian penitentiary, after pleading guilty to two felony counts involving financial transactions.

Because the Marine Corps properly dropped Plaintiff from the rolls and correctly determined that he was eligible for, but not entitled to, retirement benefits, the BCNR did not act arbitrarily, capriciously, or illegally in denying Plaintiff's request for relief. As such, Defendant's motion for judgment on the AR is granted.

**Findings of Fact**[1]

Plaintiff began his career as an enlisted Marine in 1992, and served for two years before being commissioned as a Reserve Officer. From February 2005 until September 2005, Plaintiff was deployed to Iraq. At that time Plaintiff was a Major. During Plaintiff's deployment, he mailed 20 envelopes to his wife for storage in their home safe. Plaintiff's wife reported this to a confidential informant because she believed the envelopes contained cash based on their size and shape. After his return from Iraq, Plaintiff made a series of deposits, each beneath mandatory reporting amounts, into accounts in several different banks. On January 9, 2006, Plaintiff attempted to deposit $7,700 with a Navy Federal Credit Union, but when the bank informed him it would generate a currency transaction report, he canceled the deposit.

On May 19, 2009, Plaintiff's retirement application was approved with a predicted retirement date of July 1, 2009. However, on May 25, 2009, the Naval Criminal Investigation Service ("NCIS") initiated an investigation into Plaintiff's conduct during his 2005 Iraq deployment. As a result of the investigation, Plaintiff's command placed him on "legal hold" commencing on June 5, 2009. Being placed on legal hold freezes all personnel actions, such as promotion, retirement, and moving to a new command. While on legal hold, Plaintiff continued working in a paid status as a Marine while stationed in Arizona, but his retirement was held in abeyance until the investigation and any disciplinary actions were completed.

On June 25, 2009, Plaintiff requested to be released from legal hold. On July 16, 2009, after NCIS reported the results of its investigation to Plaintiff's command, the Marine Corps denied Plaintiff's request to be released from legal hold, finding that the NCIS investigation sufficiently established the basis for the legal hold.

Nearly a year later, on May 11, 2010, the Department of Justice ("DOJ") indicted Plaintiff on 22 counts of violating 31 U.S.C. § 5324(a)(3), "Structuring Financial Transactions Through A Domestic Financial Institution." AR 46-51. On August 4, 2010, Plaintiff pled guilty to two counts of knowingly and purposely circumventing reporting and recordkeeping requirements in structuring financial transactions, a felony. Plaintiff was sentenced to two terms of confinement, served concurrently, for one year and one day, and was fined $198,510. As part of the arrangement, DOJ dropped the remaining 20 counts pending against Plaintiff. On February 4, 2011, Plaintiff began his term of confinement and remained in prison until his release on December 16, 2011.

During Plaintiff's confinement, on June 22, 2011, the Commander of Marine Forces in Central Command submitted a recommendation to drop Plaintiff from the rolls. Either the President or the Secretary of the Navy may complete the action of dropping an officer from the rolls, and the Marine Corps' Deputy Commandant for Manpower and Reserve Activity normally initiates the procedure. The action to drop an officer from the rolls is discretionary and is authorized once an officer has been sentenced to confinement and that sentence has become final. SECNAVINST 1920.6c Encl. 4, at 6. There is no required timeline for the service to complete the process. Because Plaintiff pled guilty and received two concurrent sentences in a

---

[1] These findings of fact are derived from the Administrative Record ("AR"). Additional findings of fact are in the Discussion. The Court does not correct grammatical or typographical errors in quotations from the record.

federal penitentiary, the Deputy Commandant for Manpower and Reserve Affairs recommended to the Secretary of the Navy that Plaintiff be dropped from the rolls.

Once an officer is dropped from the rolls, no certificate of discharge is issued, and the service member does not receive a characterization of service (e.g. honorable, dishonorable). An officer's characterization of service controls which benefits that officer receives and at what level. While being dropped from the rolls does not nullify any prior service, the officer is directly severed from all ties with his branch of service and loses his eligibility for retirement.

On November 28, 2011, while still confined, Plaintiff was notified he was being dropped from the rolls. Shortly thereafter, on December 16, 2011, Plaintiff was released from confinement and began two years of supervised release. After consulting with a civilian attorney, on January 4, 2012, Plaintiff submitted a response to the recommendation to drop him from the rolls, arguing that he was inappropriately kept on legal hold beyond his approved retirement date and would unjustly be denied retirement pay if dropped from the rolls. After submitting his response, Plaintiff submitted a request to retire voluntarily, which, if granted, would have terminated any future administrative actions against him. In response, the Marine Corps acknowledged that Plaintiff had the requisite service time to be eligible for retirement and that he had received approval to be retired at the discretion of the President. However, the Marine Corps distinguished this approved retirement request from an entitlement to retirement pay. Noting that officers serve at the pleasure of the President, the Marine Corps found that Plaintiff's continued legal hold was proper due to the NCIS investigation and that regulation required continuation of the hold until the Deputy Commandant for Manpower and Reserve Affairs decided to retain Plaintiff or the Secretary of the Navy separated him for substantiated misconduct.

On June 22, 2012, based on a finding of substantiated misconduct, the Secretary of the Navy approved dropping Plaintiff from the rolls. Following this decision, on July 9, 2012, the Deputy Commandant for Manpower and Reserve Affairs denied Plaintiff's request for voluntary retirement in light of Plaintiff's misconduct and prison time. Ultimately, Plaintiff was discharged from the Marine Corps effective August 13, 2012.

After being discharged, on December 5, 2012, Plaintiff submitted an application to the BCNR seeking correction of his military records and challenging the Navy's decision to drop him from the rolls. Plaintiff asserted that he was entitled to retirement pay and that his legal hold violated regulations. Additionally, Plaintiff argued that because he was returned to military control, he no longer could be subject to a drop-from-the-rolls action.

The Commandant of the Marine Corps' Judge Advocate General ("JAG") issued an advisory opinion to the BCNR stating that Plaintiff's approved retirement request only gave him a predicted date to transition, and that, until Plaintiff's retirement was actually effected at the discretion of the President, he was not entitled to retirement pay. The JAG further reasoned that Plaintiff was not returned to military control because upon his release from confinement, he immediately began two years of supervised release and could not leave Arizona or be deployed, transferred, or otherwise mobilized, thus preventing him from serving a "useful purpose" to the Marine Corps.

On November 21, 2013, the BCNR denied Plaintiff's application for correction of his Naval Record, stating that the evidence failed to "establish the existence of probable material error or injustice." AR 12. The BCNR "substantially concurred" with the JAG's advisory opinion and did not offer additional reasoning. Id. Following the BCNR's denial of his application, on April 24, 2015, Plaintiff filed his complaint with this Court, requesting reinstatement of his retirement, deletion of negative entries from his record, and back pay.

## Discussion

### Jurisdiction

The Tucker Act, 28 U.S.C. § 1491(a)(1), provides that this Court

> shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

The Tucker Act does not create a substantive right for money damages against the United States, but rather is a jurisdictional statute. United States v. Testan, 424 U.S. 392, 398 (1976). A plaintiff must show that he is entitled to money damages from an additional source of substantive law. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

Under the Military Pay Act, members of the military on either active duty or participating in a full-time training exercise are entitled to the basic pay associated with their assigned pay grade. 37 U.S.C. § 204(a)(1)-(2) (2013). This statute provides jurisdiction for this Court to hear claims brought by military personnel challenging an unlawful discharge and seeking lost pay. Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003). Jurisdiction in this Court is proper in wrongful discharge suits because "[i]f the discharge was wrongful the statutory right to pay continues . . ." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997). Additionally, in matters of retirement pay, this Court has jurisdiction because under 10 U.S.C. § 1552(c) a plaintiff is entitled to "payment of claims consequent upon the correction of military records," including correction of retirement status. Mitchell v. United States, 930 F.2d 893, 896 (Fed. Cir. 1991); see also 10 U.S.C. § 1552(c) (2015).

### Standard of Review

Motions for judgment on the administrative record are governed by Rule 52.1 of the Rules of the United States Court of Federal Claims. Under Rule 52.1, the parties are limited to the administrative record, and the Court makes findings of fact as if it were conducting a trial on a paper record. See Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005); Kennedy v. United States, 124 Fed. Cl. 309, 329 (2015); Boyle v. United States, 101 Fed. Cl. 592, 595-96 (2011). When cross-motions for judgment on the administrative record have been filed, the Court "considers 'whether given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" Volk v. United States, 111 Fed. Cl. 313, 324 (2013) (quoting DMS All-Star Joint Venture v. United States, 90 Fed. Cl. 653, 661 (2010)).

The party challenging the decision of a correction board has "the burden of demonstrating by cogent and clearly convincing evidence that the correction board acted arbitrarily, capriciously, contrary to law, or that its determination was unsupported by substantial evidence." Arens v. United States, 969 F.2d 1034, 1037 (Fed. Cir. 1992). There is a "strong, but rebuttable, presumption that the administrators of the military, like other public officers, discharge their duties correctly, lawfully and in good faith." Porter v. United States, 163 F.3d 1304, 1316 (Fed. Cir. 1998) (citations and quotation marks omitted); Dodson v. United States Gov't, Dep't of Army, 988 F.2d 1199, 1204 (Fed. Cir. 1993) (citing Arens, 969 F.2d at 1037) (stating presumption that "the military is entitled to substantial deference in the governance of its affairs").

**Plaintiff Was Not Entitled to Retirement Pay at the Time He Was Dropped From the Rolls**

Plaintiff argues that the BCNR's decision was arbitrary and capricious because once he received his approved application for retirement, he was entitled to retirement pay, and SECNAVINST 1920.6c prevented him from being dropped from the rolls. The SECNAVINST provides that if Plaintiff was entitled to retirement pay and had not committed a crime related to treason as listed in 5 U.S.C. § 8312(a)-(c), he could not be dropped from the rolls. SECNAVINST 1920.6c Encl. 4, at 7. Plaintiff and Defendant concur that Plaintiff's crimes do not fall under 5 U.S.C. § 8312(a)-(c). Resolution of the instant dispute turns on whether an approved application to retire creates an entitlement to retirement pay. Pl.'s Mot. for J on the AR 17-19; see Def.'s Mot. for J. on the AR 15-18.

Section 6323(a)(1) of Title 10 provides:

> An officer of the Navy or the Marine Corps who applies for retirement after completing more than 20 years of active service, of which at least 10 years was service as a commissioned officer, <u>may, in the discretion of the President, be retired on the first day of any month designated by the President</u>.

10 U.S.C. § 6323(a)(1) (2013) (emphasis added).

There are no ambiguous terms in 10 U.S.C. § 6323. The plain language is open to one interpretation: an officer's retirement is effective only if the President exercises his discretion and approves the officer's application for retirement and designates the month the officer's retirement is to commence. Although Plaintiff submitted his application for retirement, and it was approved by the Commandant of the Marine Corps, that approval was not the final act necessary to effect either his entitlement to retirement or his actual retirement under Section 6323(a)(1). When Plaintiff's application was approved, he only had a <u>predicted</u> retirement date, as his retirement still depended upon the President favorably exercising his discretion and designating a retirement date for Plaintiff.[2] Defendant correctly argues that the Navy "never

---

[2]   In arguing that an officer is entitled to retirement pay once his retirement application has been approved, Plaintiff relies on two cases, Ancman v. United States, 77 Fed. Cl. 368, 376 (2007) and Piotrowski v. United States, No. 13-760C, 2014 WL 7476033, at *8-10 (Fed. Cl., Dec. 30, 2014). However, the cases are not binding on this Court and are inapposite. In Ancman, both plaintiffs were already retired before filing their claims, which focused on the

retired Plaintiff" even though Plaintiff's application for retirement was approved, because Plaintiff's retirement was properly held in abeyance and approval of his application did not entitle him to retirement pay. See Def.'s Resp. 11.

**Plaintiff was Legitimately Placed on Legal Hold**

Relying on the Manual for Courts-Martial, Plaintiff raises a technical argument - - that this Manual constituted the legal authority for his legal hold but only provided jurisdiction over an officer "when action with a view to a trial of that person" was taken. Plaintiff contends that an NCIS investigation was not an action "taken toward trial," because there was no apprehension, imposition of restraint, or charges. See AR 26-27, 39. Plaintiff continues that if he had not been illegally placed on legal hold, he could not have been dropped from the rolls because his retirement would have become effective once his application was approved.

The Manual for Courts-Martial provides:

> (c) Attachment of jurisdiction over the person.
>
> (1) In general. Court-martial jurisdiction attaches over a person when action with a view to a trial of that person is taken. Once court-martial jurisdiction over a person attaches, such jurisdiction shall continue for all purposes of trial, sentence, and punishment, notwithstanding the expiration of that person's term of service or other period in which that person was subject to the code or trial by court-martial.

Rules for Courts-Martial 202(c)(1) (Joint Servs. Comm. On Military Justice 2012) (emphasis added).

Defendant argues that the NCIS investigation did constitute an action "with a view to trial" relying on United States v. Self, an opinion of the United States Court of Military Appeals. 13 M.J. 132 (C.M.A. 1982). In Self, the court held that an investigation, even without a resulting court-martial, was a sufficient basis for legal hold. Id. at 137-38. The court reasoned:

> [a]ny acts of military officials that authoritatively presage a court-martial, when viewed in light of surrounding circumstances, are surely sufficient under paragraph 11*d* of the Manual for Courts-Martial to authorize retention on active duty for purposes of trial. Even if a trial by court-martial does not eventuate for one reason or another, clairvoyant positiveness has never been required.

Id. at 138.

---

amount of retirement pay, not entitlement to retirement pay. In Piotrowski, the plaintiff's retirement was originally denied because he had not served for the required term. Ultimately, Piotrowski was convicted at a court-martial resulting in a forfeiture of all pay and allowances, which would have resulted in a revocation of retirement benefits even if he had been retired previously. Neither case involved a drop from the rolls or a determination of when an officer becomes entitled to retirement pay.

Based upon Self and the JAG's analysis, the Commander of Marine Forces in Central Command reasonably denied Plaintiff's request for release from legal hold finding that an NCIS investigation constituted "an action with a view to trial." Here, as in Self, NCIS' investigation into Plaintiff's conduct in Iraq was an initial step toward a court-martial, and although Plaintiff was ultimately prosecuted by civilian authorities in lieu of being court-martialed, the Marine Corps had the authority to place Plaintiff on legal hold.

Indeed, the Marine Corps was required to maintain Plaintiff on legal hold until the investigation was completed. As the Deputy Commandant for Manpower and Reserve Affairs stated in his recommendation to drop Plaintiff from the rolls, "commissioned officers serve at the pleasure of the President, and in the case of substantiated misconduct, will remain on legal hold" until either the Deputy Commandant for Manpower and Reserve Affairs retains the officer, or the Secretary of the Navy separates the officer for the substantiated misconduct. AR 90-91; see SECNAVINST 1920.6C Encl. 2, at 1; Marine Corps Manual for Legal Admin. Ch. 7, at 4-30.

Further, the Marine Corps Manual for Legal Administration required the Marine Corps to hold Plaintiff's retirement in abeyance once the Corps was notified of Plaintiff's alleged misconduct. Paragraph 4009 of this manual provides:

> Upon receipt of the required notification of officer misconduct or substandard performance of duty . . . the Director, Manpower Management . . . in conjunction with local administrative centers, will hold in abeyance all personnel actions (such as promotion, retirement, separation, transfer to the Reserve component, PCS/PCA orders, or PEBs) relevant to reported officers.

Marine Corps Manual for Legal Admin. Ch. 7, at 4-30 (emphasis added). The Marine Corps Manual for Legal Administration is mandatory and requires the legal hold to remain in effect so as to "maintain the status quo until these matters are resolved by cognizant commanders and/or civilian authorities." Id. As such, the Marine Corps properly maintained Plaintiff on legal hold and held Plaintiff's retirement action in abeyance through his incarceration and supervised release, which ended on December 17, 2013.

Additionally, Plaintiff argues that turning primary responsibility of his case over to the U.S. Attorney's office was an "abuse of discretion," because the transfer of primary authority over his case to the Department of Justice ("DOJ") terminated court-martial jurisdiction. However, in turning the investigation and judicial proceedings over to DOJ, the Marine Corps was following a Memorandum of Understanding ("MOU") and was not relinquishing its right to take further administrative or disciplinary measures.

Indeed, the MOU between the Department of Defense ("DOD") and DOJ required DOD to turn primary responsibility of Plaintiff's case over to DOJ because Plaintiff's violation of 31 U.S.C. § 5324(a)(3) had to be tried in a United States District Court. See Dep't of Defense Instruction 5525.07 (June 18, 2007) ("DoDI 5525.07"). DoDI 5525.07 states that "[DOJ] has primary responsibility for enforcement of federal laws in the United States District Courts" and that for cases relating to "[f]rauds against the Department of Defense and Theft and Embezzlement of Government Property . . . criminal investigative responsibility will be determined by the Department of Justice in consultation with the Department of Defense." DoDI

5525.07 Encl. 2, at 5, 7. The MOU further provided that "[n]othing in this Memorandum limits the Department of Defense investigations conducted in support of administrative actions . . . ." Id. at 11. As such, the Marine Corps retained authority to continue its administrative proceedings to determine Plaintiff's characterization of service for retirement or the drop-from-the-rolls procedure pending the outcome of Plaintiff's civilian legal proceedings.

**The Navy Reasonably Declined to Return Plaintiff to Military Control Following His Confinement**

Plaintiff argues that the governing SECNAVINST prohibited the Marine Corps from dropping him from the rolls because he was returned to military control following his release from prison.

This SECNAVINST provides:

> a. Under sections 1161, 12684, and 6408 of reference (a), the President or SECNAV, depending upon the applicable statute, may drop from the rolls of an Armed Force a Regular or Reserve officer who
>
> \* \* \*
>
> (2) has been sentenced to confinement in a Federal or State penitentiary or correctional institution after having been found guilty of an offense by a court other than a court-martial or other military court, and whose sentence has become final,
>
> \* \* \*
>
> b. Action to initiate dropping officers from the rolls shall normally be undertaken by [Chief of Navy Personnel] or the [Deputy Commandant of the Marine Corps for Manpower and Reserve Activity], on a case-by-case basis, after a finding that one or more of the above conditions exist, and the return of the officers to military control for processing for separation for cause under this instruction will serve no useful purpose.

SECNAVINST 1920.6C Encl. 4, at 6.

Plaintiff has not established a violation of this regulation. Rather, because Plaintiff pled guilty to two felony counts and served a prison sentence, the Marine Corps had the discretion to drop him from the rolls and determine that returning Plaintiff "to military control for processing for separation for cause under this instruction [would] serve no useful purpose." Id. Contrary to Plaintiff's argument, he was not somehow returned to military control and required to be processed for separation merely because he was in an active duty status while on supervised release. The Marine Corps initiated the drop-from-the-rolls procedure after Plaintiff was convicted, sentenced, and had exhausted his appeal opportunities. AR 88-89. The Assistant Secretary of the Navy reasonably determined that returning Plaintiff to military control and

processing Plaintiff for separation for cause would not have served a useful purpose to the Marine Corps.  AR 89-91.

## Conclusion

      Defendant's Motion for Judgment on the Administrative Record is **GRANTED**. The Clerk of Court is directed to enter judgment accordingly.


                          s/Mary Ellen Coster Williams
                          **MARY ELLEN COSTER WILLIAMS**
                          **Judge**